## MEPHAMS *v.* BIESSEL.

1. Compensation to a person who had acted for four months (from 16th March to 26th July), both as captain and as one of two pilots on a Missouri steamer, left at $900 per month, at which sum the Circuit Court had fixed it; the evidence, which though not so full as it ought to have been, showing that pilots' wages were at the time very high, that the person had performed his duty in both capacities well, and that the owners had charged his services against the government (which had impressed the vessel during twenty-six days of the time) at the rate of $1000 per month.

2. A master not held liable for injury to flour, apparently arising from a bad stowage; the same having occurred from a necessity to unload, and reload, in order to get across a bar in the river; the testimony showing that the captain was not blamable, and there having been some reason to believe that the injury arose from causes inherent in the flour itself.

THIS was an appeal in admiralty from the decree of the Circuit Court for the District of Missouri, in which one Biessel, on the one side, had filed a libel *in personam* against M. & W. Mepham, owners of the steamer Iron City, for wages as master and pilot; and in which they, on the other, sought to set off against the claim for services, at whatever sum these might be estimated, a demand that they made against Biessel for injury to certain flour, which on crossing a bar in the river (in order to lighten the vessel, and so get over the bar), it had been necessary to put ashore, and afterwards when the vessel had got over, with the rest of the cargo (that being unloaded and put ashore below the bar), to come back

for and reload; and which was ultimately found to be sour;—injured, as the Mephams asserted, by Biessel's carelessness in stowing it, when it was taken on board the second time.

The court below sustained the claim of the libellant, fixing his wages at $900 a month, and refused to allow the set-off raised by the other side.

*Mr. Dick, for the appellant; Mr. Leighton, for whom Mr. Drake had leave to file a brief, contra.*

Mr. Justice SWAYNE stated the case more particularly, and delivered the opinion of the court.

The only questions presented for our consideration are, the value of the services of the appellee as master and pilot of the steamer Iron City during the period of his employment upon her in those capacities, and whether he can be held liable upon the principle of recoupment for the damage sustained by a part of the cargo of the vessel upon her first voyage after he took charge of her as captain, which was a voyage from St. Louis to Fort Benton, upon the Missouri River. The services commenced on the 16th of March, 1866, and terminated on the 26th of July following—making a period of four months and ten days. Four witnesses were examined. They were Biessel, the appellee; W. G. Mepham, one of the appellants; Bush, the mate, and Stone, the pilot. The leading facts, as developed in the proofs bearing upon the subject of compensation, are as follows:

Biessel had been in the employment of the Mephams as mate upon a steamer at $150 per month. He talked of seeking employment elsewhere, expecting to receive $300 per month. Captain Hunter, also in the employment of the Mephams, to whom he made the communication, requested him to remain until the captain could consult the owners. An interview took place. Biessel told them he had never served as captain, and doubted whether he would suit them in that capacity. They employed him as captain. It was usual to employ two pilots. Biessel found two who asked jointly $1600 per month. Pilots were much in demand at

that time.   He proposed to the owners to employ Stone as a pilot at $800 a month, and to serve himself as the other pilot, besides performing his duties as master.   They assented, and assisted him to procure a pilot's license.   The arrangement was carried out.   Biessel testifies that he told them it would cost less than to employ two pilots, in addition to the captain.   Mepham testifies that he said it should cost them nothing for pilotage but the wages of Stone.   Here the parties are at issue, and there is no other testimony upon the subject.

The wages of pilots varied, according to the testimony, from $200 to $1000 per month.   Biessel says the usual compensation of captains was $400 per month.   Mepham testifies that they paid their three other captains $200 per month. The proof is satisfactory that Biessel performed his duty as captain well and faithfully, and that, in addition, he did full as much service as Stone in discharging the duties of pilot. The boat was impressed into the service of the United States, and was thus employed during a period of twenty-six days. For that time we are satisfied from the evidence that the services of Biessel were charged against the government, and paid for to the appellants, at the rate of a thousand dollars per month.   Both parties agree that there was no special contract as to the compensation Biessel should receive. It is to be regretted that the proof is not fuller as to the wages at that time of both captains and pilots.   It could have been easily made so, and would have relieved us from some embarrassment which we have felt in coming to a conclusion as to this branch of the case.   The entire testimony of Biessel is characterized by a fairness and candor which have impressed us favorably in his behalf.   The Circuit Court fixed his compensation as master and pilot at $900 per month.

After a careful examination of all the testimony in the record, we have found no sufficient reason to dissent from this allowance.

The claim for recoupment cannot be sustained.   The flour to which it relates was in sacks, which were inclosed in other sacks.   According to the shipping phrase it was "double

sacked." The shipper directed it to be carried upon deck. A part of it was originally placed in the hold. Upon discovering this, Biessel caused it to be removed to the deck, and directed that no more should be put in the hold. During the voyage, Bush, the mate, says it became necessary for the boat to " double trip it," in order to pass a bar. A part of the cargo was landed below the bar and a part above it. This flour was landed above. All the passengers, some fifty in number, assisted in unloading and reloading. Some of them in reloading put a part of the flour in the hold without the knowledge of the captain or mate. The mate subsequently saw it there, but allowed it to remain, and did not advise the captain. The captain knew nothing of it until the vessel reached Fort Benton. That part of the flour was then found to be soured. Mepham says the loss to the appellants was $10 a sack upon a hundred sacks, amounting to $1000. It was the duty of the mate to see to the loading. According to the testimony, the captain was not blamable. There was other flour in the hold during the entire voyage, which arrived at Fort Benton uninjured. There is some reason to believe that the spoiling of the flour in question arose from inherent causes, and not from its being kept under the deck.

There is nothing in the record which would warrant us in holding Biessel responsible.

The decree of the Circuit Court is

AFFIRMED.